Ella Katherine YERY, Appellee,

v.

Richard Thomas YERY, Appellant.

No. 53049.

Supreme Court of Oklahoma.

April 21, 1981.

Rehearing Denied June 22, 1981.

Carl Hughes, Oklahoma City, for appellant.

David L. Russell, of Benefield, Travis, Russell & Freede, Oklahoma City, for appellee.

HARGRAVE, Justice.

Richard Thomas Yery brings this appeal from a judgment of the District Court of Oklahoma County, the Honorable Homer Smith, presiding, dated November 28, 1978. This appealed order awarded judgment against Mr. Yery for unpaid child support from September 1976 to October, 1978 in the amount of $15,600.00, in addition to an arrearage of $10,400.00 for alimony due and unpaid on a principal judgment of $48,-

000.00 in favor of the former wife, Ella Katherine Yery. The selfsame order denied appellant's motion to vacate or modify the original divorce judgment, alleged to be void as issued in absence of jurisdiction over the person of the defendant.

The plaintiff, Ella Katherine Yery, was an Oklahoma resident for three years prior to a trip to Weisbaden, Germany, at which time she married the defendant, Col. Richard Thomas Yery, in June of 1964. The children had been born of the marriage prior to 1972, when the couple were traveling from previous East Coast duty station of Colonel Yery to the West Coast in preparation for a transfer to Taipei, Taiwan. The couple stopped over in Oklahoma and after considering the past difficulties of the parties, plaintiff decided to remain in Oklahoma rather than continue on overseas. At that time, an agreed order for separate maintenance was entered in the District Court of Oklahoma County providing for a total sum of $500.00 per month to be paid to plaintiff. No issue was then raised pertaining to an infirmity in jurisdictional facts or venue.

The plaintiff rented an apartment in Oklahoma City and enrolled the children in a local school, obtained a job within the county, obtained a driver's license, and registered to vote within Oklahoma County. Appellant regularly paid the above mentioned separate maintenance funds to the plaintiff for thirteen months. In August of 1973, appellant returned to Oklahoma for four or five weeks and lived with the appellee as husband and wife for half of that period. The appellant husband was at the time enroute to his next duty station, Vandenberg Air Force Base. The couple decided to go to California and continue to attempt a reconciliation; failing that they agreed the wife would return to Oklahoma and the appellee would continue to provide the separate maintenance funds he had previously contributed. The return to California was made in September of 1973. The reconciliation attempt did not accomplish its goal and the plaintiff then removed herself to Oklahoma City.

The plaintiff thereafter filed her petition for divorce on November 8, 1974, alleging the statutory ground of incompatibility. The record demonstrates clearly that the defendant, Col. Yery, failed to claim the first summons issued. It is included in the record, as yet unopened, correctly addressed and stamped "unclaimed". Thereafter ensued an unusually complicated effort to effect service upon the Colonel. The difficulties in obtaining service are attested to by affidavits included in the record. While service of process under Calif. Civ. Procedure, T. 5 § 415.20(b) in the normal circumstances would be expeditious, the record compels the conclusion that Col. Yery utilized his position as a legal officer of the Armed Forces of the United States and his rank as full Colonel to evade service of process. The record demonstrates the Colonel instructed his subordinates to threaten process servers with incarceration, and issued an "opinion" that civil process could not be served upon Vandenberg Air Force Base. Despite these difficulties, plaintiff's counsel obtained service on the Colonel under CCP 415.20(b), providing for service by leaving copies at the usual place of business of the person served in the presence of a person apparently in charge of his office or place of business, at least 18 years of age, who was informed of the general nature of the papers. This service was made by sending a student to the office with a package containing the service papers. An affidavit of plaintiff counsel's California associate attests to this service, stating the provision of the California Civil Procedure requiring the service agent to notify the party served at the place of business of the general nature of the papers was accomplished in the best available manner, by attaching a written notice to the outside of the package. The attorney's affidavit states defendant's threat of incarceration of process servers foreclosed the verbal notification. The California attorney states that under the circumstances of this proceeding, given its surroundings, the written note conveyed the actual knowledge required by the statute.

Once service was accomplished, the case proceeded in the normal manner, the de-

fendant appeared specially and made a motion to quash the summons, order and purported service on two grounds, those being defective service of process and lack of jurisdiction over the person of the defendant and this cause of action. This motion also alleged venue to be improper. The trial court overruled the motion to quash and plea to jurisdiction in October of 1975. The defendant then applied to this Court for a writ of prohibition, Cause No. 49,007, arguing the method of service in California was improper and there was no subject matter jurisdiction in the District Court of Oklahoma County, in a addition to the absence of jurisdiction over the person of the defendant. The Oklahoma Supreme Court, at that time, assumed jurisdiction over the cause and denied the petitioner's writ. Thereafter, the defendant demurred to the divorce petition after plaintiff filed a motion for default judgment. Nearly two months later, the defendant's attorney withdrew from the cause, at the request of the defendant.

Two months later, the trial court issued the decree of divorce which recites that the defendant did not appear for trial and had dismissed his attorney. The date of the decree is the third day of September, 1976.

The record in this appeal reflects no appeal or other post judgment actions were made by the defendant. The next 150 pages of the record reflect no matters other than garnishment proceedings by the former wife against the officer, Colonel Yery. The record reflects precious little success in collecting the funds owed the wife on the unappealed judgment for over two years; indeed until plaintiff filed a "motion to reduce child support arrearage to judgment and to verify alimony judgment arrearage," the defendant was silent in the record. Then, on November 28, 1978, more than two years after judgment, the defendant filed a motion to vacate or modify the District Court judgment of 3 September 1976, alleging exactly the same grounds of infirmity presented to this Court earlier in the petition for writ of prohibition of October, 1975. The District Court heard the motion to vacate and the motion to reduce arrearages to

judgment and found that it had jurisdiction over the parties, and therefore denied the motion to vacate. The same journal entry enters judgment for unpaid alimony and child support.

The appellant's petition in error realleges the same errors as noted at the trial court level in the defendant's motion to vacate. Those grounds are: that the judgment is void for want of jurisdiction over the person of the defendant and over the subject of the action, and that the District Court erred in refusing to grant defendant's motion to vacate.

■ The trial court properly considered the motion to vacate the judgment more than two years after rendition under the grounds listed in that motion. The grounds cited are: mistake of the clerk, irregularity in obtaining a judgment, fraud practiced by the successful party in obtaining the judgment or order. These are causes for vacation under 12 O.S. 1971 § 1031, Third, Fourth, and Seventh. The proper method of attacking a judgment under ground Four and Seven of § 1031 is stated as being by petition, verified by affidavit with summons issued and served, as in the commencement of an action. Compliance with the above noted requirements is jurisdictional, and the court acquires no jurisdiction to vacate the judgment under causes listed in 12 O.S. 1971 § 1033 in the absence of compliance with its provisions. *Sadberry v. Hope, 444 P.2d 175 (Okl.1968).* Furthermore, 12 O.S. 1971 § 1038 specifies a limitation period of two years for vacation of a judgment for the Fourth and Seventh ground of 12 O.S. 1971 § 1031. The motion to vacate we are here concerned with was filed later than two years after judgment. The third ground mentioned in 12 O.S. 1971 § 1031 is mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order. The limitation period of 12 O.S. 1971 § 1038 in which a party may obtain a vacation is three years. Under this basis for vacation, the motion was timely. Improper service has been held to be reachable in vacation proceedings under § 1031

Third. *Westbrook v. Dierks, 292 P.2d 172 (Okl.1956).* Inasmuch as the motion to vacate under § 1031 Third was timely filed, appellate examination of proper service of process need not be restricted to determining whether the judgment is void on its face.

 Appellant's first proposition in error raised in this appeal from the denial of his motion to vacate relates to the jurisdiction of the Oklahoma court over the person of the defendant. Specifically, the defendant objects to the exercise of jurisdiction over his person, contending his contacts with this state are so minimal that exercise of personal jurisdiction over him in the absence of this minimal contact with the forum state offends the traditional notions of fair play and substantial justice. Defendant refers the Court to *Kulko v. Supreme Court of California, etc., 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1980),* as factually similar to the case at bar, contending that under the precepts there announced, exercise of personal jurisdiction over this defendant is unacceptable. The appellant correctly states that the *Kulko* case and the instant proceeding are almost on all fours. The qualifying "almost", however, is the distinguishing factor which differentiates the two cases and mandates the conclusion that the defendant, Col. Richard Thomas Yery, is personally amenable to the jurisdiction of the Oklahoma County District Court. In *Kulko, supra,* the Supreme Court summarized the constitutional standard for determining whether a state may enter a binding judgment against appellant, extracted from *International Shoe Co. v. Washington, 326 U.S. 310, at 316, 66 S.Ct. 154, at 158, 90 L.Ed.2d 95 (1945), Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed.2d 278 (1940),* and *McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).* A defendant must have enough contact with the forum state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The requisite contact with the forum is now denominated "minimum contacts." Although the forum state's interests and that of the plaintiff in proceeding in the forum of plaintiff's choice are relevant considerations, still it is essential in all cases to determine whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require the defendant to conduct his defense in this forum. *Kulko, supra,* additionally noted that any test of reasonableness including that now described as the minimum contacts standard, is not susceptible to mechanical determination but each factual scenario must be examined to determine whether the affiliating circumstances are present.

In *Kulko, supra,* the U. S. Supreme Court determined that the minimum contacts precept described in *International Shoe* was extended to a degree unwarranted by *International* by the Supreme Court of California. The facts of that case are indispensable in illustrating what minimum contact with a forum state is insufficient to allow in personam jurisdiction to be exercised over a defendant. There the husband and wife were married in California during the husband's three day stopover there prior to overseas military duty in 1959. The wife returned to New York. The husband also returned to New York after his assignment was over, and the couple had two children in New York in 1961 and 1962, residing there until 1972. In the latter year a separation agreement was entered into by the couple in New York. That agreement specified the children were to remain with the father in New York except for a three month summer vacation in California with the mother and set child support to the wife in a yearly amount applicable to those periods which she had custody. Subsequently the wife procured a Haitian divorce incorporating the previously described terms. In 1973 the daughter remained in California on her own request, acquiesced in by the father. The mother arranged for the other child to stay in California two years later. At this point, the mother sought modification of the Haitian decree to award her full custody and to increase the support award accordingly. The appellant appeared specially claiming the state was not warranted

in exercising in personam jurisdiction over him in the absence of minimal contacts with the forum. The California Supreme Court held the appellant had caused an effect within the state, and personal jurisdiction arising out of that effect was proper, if reasonable. The reasonableness of the action's prosecution in California was determined to be established because the father had "purposely availed himself of the benefits and protection of California law" by sending the daughter to live with her mother in that jurisdiction. The United States Supreme Court held that under these facts the mere act of sending a child to California to live with its other parent connotes no intent to obtain or secure a benefit in that state that renders the assertion of jurisdiction over the defendant fair. In the course of that opinion the court quoted from *Hanson v. Denckla, 357 U.S. 235, at 253, 78 S.Ct. 1228, at 1240, 2 L.Ed.2d 1283,* noting that the unilateral activity of those claiming a relationship with a nonresident defendant cannot, of itself, satisfy the requirement of contact with the forum state, because in each case there must be some act by which the defendant purposefully avails himself of the privilege of conducting activity within the forum state. Then in reversing the California decision, the Court stated: "A father who agrees in the interests of family harmony and his childrens' preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have 'purposefully availed himself' of the 'benefits and protections of California's laws."

■ The facts of the case at bar, although similar, are materially different, and from the differences between the instant proceeding and *Kulko, supra,* it is concluded that Col. Yery had contacts with the forum state sufficient to allow in personam jurisdiction to be exercised over him. In *Kulko, supra,* the Supreme Court stated that the controversy involves an agreement which had virtually no connection with the forum. The agreement mentioned was the New York separation agreement incorporated in a Haitian divorce decree which was sought to be entered as a California judg-

ment with modification. In the proceeding before this Court the record demonstrates a voluntary submission to the felicity of the law of domestic relations of this state. The defendant has entered into a separation agreement in the state of Oklahoma prior to the institution of this action. This agreement was incorporated into a judgment of separate maintenance. A more clearly purposeful act indicating that the defendant-appellant has invoked the benefits and protection of the State law of Oklahoma is improbable. That act is in itself a sufficient connection between the defendant and the forum state to fairly require the defendant to defend an action in this forum over substantially the same issues and facts, and which action is itself the final resolution of a controversy foreshadowed by the earlier proceeding. Indeed, in Oklahoma a petition for separate maintenance has been held amendable to pray for a divorce. Thus it is determined here that the defendant has sought the solace of Oklahoma law in this matter and his contact with the forum cannot be said to be too attenuated to support jurisdiction of the Oklahoma Court over him. This single fact distinguishes this action from *Dunn v. Dunn, 550 P.2d 1369, (Okl.App. 1976),* argued by the appellant to be indicative of the correct application of the minimum contact doctrine.

Additionally, appellant contends that *Perdue v. Saied, 566 P.2d 1168 (Okl.1977),* incorrectly extends the constitutionally mandated minimum contacts standard demonstrated by *Kulko, supra.* Title 12 O.S. 1971 § 1701.03(a)(7) cannot be said to be overbroad as applied in this action because of an independent basis for the existence of personal jurisdiction exists here over and above *Perdue's* holding that mere presence of a minor child within the state is a contact sufficient to allow in personam jurisdiction for litigation of support issues. In this case we are not dealing with personal jurisdiction based solely on the presence of the minors in this state. It is therefore unnecessary to reach the issue of possible differences between *Kulko, supra,* and *Perdue, supra,* here and no opinion is expressed thereon.

 The defendant additionally briefs the contention that the judgment of divorce is the product of abuse of the trial court's legal discretion insofar as the amount of child support, alimony and division of property. As previously discussed, this action is here presented as an appeal from a motion to vacate under 12 O.S. 1971 § 1031 Third made more than two years after the rendition of judgment, and within the three year limitation provided for 1031 Third motions to vacate by 12 O.S. 1971 § 1038. In an appeal from a motion to vacate this Court does not look to the original judgment, but to the correctness of the court's response to the motion to vacate. This Court has previously held that under 12 O.S. 1971 § 1031 Third, the correctness of an amount of a judgment under the evidence before the court is contestable as a direct appeal from the judgment, but that issue is not presented on the occasion of a motion to vacate the judgment, nor an appeal therefrom. § 1031 Third. *Cunningham v. Cunningham, 571 P.2d 839 (Okl.1977), Welden v. Home Owners Loan Corp., 193 Okl. 167, 141 P.2d 1010 (1943).*

Lastly, the defendant contends that certain provisions of the divorce decree are void on their face, citing *Kunc v. Kunc, 186 Okl. 297, 97 P.2d 771 (1940).* The provisions referred to in defendant's brief and quoted therein relate to payment of medical expenses for the minor children and the purchase of life insurance for the use and benefit of the minor children. The face value of the policy ordered by the decree is reducible year by year, requiring only coverage for unpaid child support and alimony. Additionally, that portion covering the alimony judgment is ordered to be kept in force only as long as plaintiff is unmarried and not deceased. This citation of *Kunc v. Kunc, supra,* does not apply to the judgment here examined and argued to be void. The teaching of *Kunc v. Kunc* is simply that there is no authority to require a spouse and parent to build up an estate, by insurance or otherwise, to be paid to a child after majority. The provisions here questioned do not require an insurance corpus be accumulated, nor does it do more than insulate the alimony and child support judgment from an untimely demise of the father and former husband. The judgment cannot therefore be said to be at odds with *Kunc v. Kunc.*

The judgment of the trial court denying the defendant's motion to vacate a judgment not demonstrated to be void on its face nor subject to vacation as discussed is affirmed.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, HODGES, LAVENDER and DOOLIN, JJ., concur.

SIMMS and OPALA, JJ., concur in result.